# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2752
_____

United States of America

*Plaintiff - Appellee*

v.

Keshon Daveon Baxter

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: April 16, 2026
Filed: July 13, 2026
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A federal grand jury indicted Keshon Baxter on a charge of possessing a firearm as an unlawful drug user in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). After proceedings before this Court and remand back to the district court,[1]

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Baxter made an oral renewed motion to dismiss his indictment, arguing that § 922(g)(3) is unconstitutional as applied to him. The district court reserved ruling on this motion pending his trial and a post-trial dangerousness hearing. At a bench trial on stipulated facts and evidence, the district court found Baxter provisionally guilty until it resolved his constitutional challenge contained within his motion to dismiss. The district court then held an evidentiary hearing regarding Baxter's motion to dismiss and subsequently denied it. It then sentenced him to 64 months' imprisonment and 3 years' supervised release. Baxter appeals the denial of his motion to dismiss the indictment. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On May 21, 2023, gang members from two gangs—Strap and C-Block—began fighting in downtown Des Moines, Iowa. Baxter, a Strap gang member, was involved in this fight. When law enforcement attempted to break up the fight, the gang members ran in opposite directions, but resumed fighting 30 minutes later. The officers again approached, and Baxter and other Strap members chased the C-Block gang. As the officers were pursuing the chase, a bystander told them that Baxter had a gun. The officers then confronted Baxter and asked what was in his pocket. Baxter responded, "nothing" and ran from the officers. He was apprehended shortly thereafter. The officers searched Baxter and found a loaded pistol and a baggie of marijuana on his person. The officers then obtained a search warrant to test Baxter's urine for the presence of controlled substances; the test confirmed the presence of THC or marijuana metabolites. Baxter was subsequently charged in a one-count indictment for being an unlawful drug user in possession of a firearm (namely, a Taurus 0.40 caliber pistol) between August 31, 2022, and May 21, 2023.

This is the second time this case has been before our Court. In August 2023, Baxter filed a motion to dismiss his indictment on the grounds that 18 U.S.C. § 922(g)(3) violated the Second Amendment as applied to him; he also claimed that the statute was unconstitutionally vague. The district court denied his motion without a hearing, and Baxter entered a conditional guilty plea to being an

unlawful user of marijuana in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8) but reserved the right to appeal the district court's ruling on his motion to dismiss. The district court sentenced him to 64 months' imprisonment. Baxter appealed.

We affirmed the district court's conclusion that § 922(g)(3) was not unconstitutionally vague but reversed and remanded its denial of Baxter's motion to dismiss, finding that the record was insufficient to determine whether § 922(g)(3) was unconstitutional as applied to him. See United States v. Baxter, 127 F.4th 1087, 1090-92 (8th Cir. 2025). On remand, the district court granted Baxter leave to withdraw his guilty plea. He did so. The parties then proceeded to a bench trial on a stipulated record, and the district court found Baxter guilty. The district court then held an evidentiary hearing regarding Baxter's motion to dismiss.

At the evidentiary hearing, the Government introduced photographs and videos taken by law enforcement and from Baxter's social media accounts, police reports, and physical evidence. Many of these photos and videos showed Baxter smoking or possessing marijuana, while others depicted Baxter displaying, brandishing, or pointing various firearms at the camera. The Government also presented testimony from Dr. Marilyn Huestis, a toxicologist, and detective Jeffrey George of the Des Moines Police Department.

Dr. Huestis has more than 55 years of experience as a pharmacologist and toxicologist. Although she did not evaluate Baxter, she testified that there is a strong connection between chronic cannabis use and aggressive and violent behavior. She noted that such behaviors are also common symptoms of withdrawal, which individuals can experience several days after their last marijuana use.

Detective George works in the Des Moines Police Department's Intelligence Section, and his expertise is in gang-related crime and violent crime. He acknowledged that Baxter admitted he started using marijuana at age 13. Moreover, he testified that although Baxter claimed he smoked one blunt of marijuana twice a

week, from his review of Baxter's Snapchat activity from January 2022 to March 2023, he posited that Baxter used marijuana daily as "[t]here were hundreds of videos of him in possession of and consuming marijuana." He also testified that there were a similar number of photos and videos showing Baxter possessing firearms; Baxter frequently posted photos and videos with at least ten different firearms—four of which are now in law enforcement possession.

Following the evidentiary hearing, the district court denied Baxter's motion to dismiss, holding that § 922(g)(3) did not violate the Second Amendment as applied to him. It applied the two-part Bruen[2] test and first concluded that Baxter's conduct was clearly protected by the plain text of the Second Amendment. As to prong two, the district court concluded that the Government has the burden of establishing the facts necessary to demonstrate a historical analogue by a preponderance of the evidence. It acknowledged that this Court has recognized two historical analogues for § 922(g)(3): the longstanding tradition of disarming those who are both mentally ill and dangerous and those who terrorize or threaten others. It went on to hold that § 922(g)(3) was constitutional as applied to Baxter under both analogues. First, it concluded that his conduct on the night of his arrest was "precisely the type of dangerous behavior which would have been prohibited under historical analogue for the mentally ill." Second, the court held that Baxter terrorized and posed a credible threat to public safety based on his criminal history, his social media activity, and his conduct on the night of his arrest. Accordingly, the district court sentenced Baxter to 64 months' imprisonment and 3 years' supervised release. Baxter appeals the district court's denial of his motion to dismiss.

## II.

Baxter contends that the district court erred in denying his motion to dismiss because, as applied to him, 18 U.S.C. § 922(g)(3) violates his Second Amendment right to keep and bear arms. "We review the decision denying dismissal of the

---

[2]N.Y. State Rifle & Pistol Ass'n, v. Bruen, 597 U.S. 1, 26 (2022).

indictment de novo and the underlying factual findings for clear error." United States v. Woods, 978 F.3d 554, 564 (8th Cir. 2020) (citation omitted).

Pursuant to 18 U.S.C. § 922(g)(3), unlawful drug users are prohibited from possessing firearms. "We have held that a defendant falls within the statute's ambit if he 'was actively engaged in the use of a controlled substance during the time he possessed firearms.'" United States v. Perez, 145 F.4th 800, 804 (8th Cir. 2025) (citation omitted). Baxter does not contest that he was a marijuana user at the time that he possessed his Taurus 0.40 caliber pistol. Rather, he contends that his indictment under § 922(g)(3) violates his Second Amendment rights.

As Baxter raises an as-applied challenge, we must look at the facts of his case to determine whether his indictment deprived him of his Second Amendment rights. See id. "A two-part test, based on 'text and historical understanding,' governs" such a challenge. United States v. Veasley, 98 F.4th 906, 909 (8th Cir. 2024) (quoting Bruen, 597 U.S. at 26). We first ask if "the Second Amendment's plain text covers an individual's conduct." Bruen, 597 U.S. at 17. If so, then the Government must show that the "regulation is consistent with this Nation's historical tradition." Id. We have previously concluded that "drug users 'are part of "the people" whom the Second Amendment protects.'" Veasley, 98 F.4th at 910 (citation omitted). Neither party argues for a contrary result here. Accordingly, we conclude that the Second Amendment covers Baxter's conduct, so we must resolve only whether Baxter's indictment is "analogically consistent with firearms regulation at the Founding." Perez, 145 F.4th at 804.

A.

The Government has the burden of demonstrating that § 922(g)(3), as applied to Baxter, comports with this Nation's historical tradition of firearm regulation. See Bruen, 597 U.S. at 24. However, the parties dispute what standard of proof applies to this burden. The district court concluded that the Government has the burden of establishing the facts necessary to demonstrate that Baxter's conduct is consistent

with a historical analogue by a preponderance of the evidence. Baxter contends that the Government should be held to a reasonable doubt standard.[3]

Although we have not weighed in on this question before, we agree with the district court that a preponderance of the evidence standard is appropriate. The district court reasoned that adopting a preponderance standard does not violate Baxter's due process rights because determining whether the application of § 922(g)(3) as applied to him is consistent with the Nation's historical tradition of firearm regulation is not an element of the crime. We agree. See In re Winship, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); see also United States v. Ochoa Moreno, 811 F. Supp. 3d 981, 986 (S.D. Iowa 2025) ("The Due Process Clause does not require proof beyond a reasonable doubt every time the Government must justify a burden on a fundamental right." (collecting cases)). Baxter's reliance on the Supreme Court's decision in Chapman v. California, 386 U.S. 18 (1967), to suggest a contrary result is in vain. There, the Supreme Court held that before a "federal constitutional error [at trial] can be held harmless," it must be "harmless beyond a reasonable doubt." Id. at 24. However, Baxter does not argue that the district court committed any constitutional errors at his bench trial, so Chapman is inapposite. As such, we conclude that the Government must establish

---

[3]It is unclear whether Baxter challenges the Government's burden of proof in identifying historical analogues or its burden in demonstrating that his conduct is relevantly similar to a historical analogue. Regarding the former inquiry, the Supreme Court has stated that the Second Amendment does not require the Government to identify "a historical twin," Bruen, 597 U.S. at 30 (emphasis omitted), and this Court has held that § 922(g)(3) comports with the Nation's history of firearm regulation when the use of a controlled substance made the defendant act like someone mentally ill and dangerous or caused the defendant to induce terror or pose a credible threat to the safety of others. See, e.g., United States v. Cooper, 127 F.4th 1092 (8th Cir. 2025); see also Perez, 145 F.4th 800. We therefore assume that Baxter advances only the latter argument—that the Government has not met its burden in establishing that his conduct falls within the scope of the identified historical analogues.

the facts necessary to demonstrate that Baxter's conduct is consistent with a historical analogue by a preponderance of the evidence.

B.

Next, we must examine whether Baxter's indictment is consistent with firearm regulation at the Founding. The district court concluded that § 922(g)(3) is constitutional as applied to Baxter under both Founding-era analogues that we identified in Veasley and Cooper: "confinement of the mentally ill" and the "criminal prohibition on taking up arms to terrify the people." See Veasley, 98 F.4th at 912, 916; United States v. Cooper, 127 F.4th 1092, 1095-96 (8th Cir. 2025). The Government advances these same two historical analogues on appeal as well as the Founding-era prohibition on the possession of firearms by habitual drunkards. As we only need to identify one historical analogue, our analysis will start and end with the "Terror of the People" analogue. Veasley, 98 F.4th at 916; see Bruen, 597 U.S. at 30 (explaining that "analogical reasoning requires only that the government identify *a* well-established and representative historical analogue, not a historical twin" (emphasis added and omitted)).

We have held that § 922(g)(3) is consistent with the Second Amendment when a drug user's conduct is analogous to conduct falling within the "criminal prohibition on taking up arms to terrify the people." Cooper, 127 F.4th at 1095 (citation omitted); see also United States v. Rahimi, 602 U.S. 680, 693 (2024) ("[T]he Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others."). We explained that Founding-era laws authorized imprisonment and forfeiture of arms when an individual offensively used a firearm to terrorize others. See Cooper, 127 F.4th at 1095 ("As 'a mechanism for punishing those who had menaced others with firearms,' an essential element was 'terrorizing behavior . . . accompany[ing] the possession[.]'" (second and third alteration in original) (citation omitted)).

Baxter argues that the Government failed to prove that his conduct was sufficiently analogous to the proscribed behavior under this historical analogue. The Government counters that Baxter's criminal history, social media activity, and conduct on the night of his arrest demonstrate that his behavior is relevantly similar to the conduct prohibited under the historical laws that criminalized terrorizing others. The district court agreed with the Government.

To determine if Baxter's conduct is relevantly similar to the conduct sanctioned by the Terror of the People laws, we ask if Baxter's marijuana use "would or did make him 'induce terror, or pose a credible threat to the physical safety of others with a firearm.'" Perez, 145 F.4th at 809 (citation omitted). The answer is undoubtedly yes. Baxter began using marijuana when he was 13 years old; he used marijuana on a regular basis; and a sample of his urine taken following his arrest tested positive for marijuana metabolites. At the evidentiary hearing, Dr. Huestis explained that there is a strong connection between chronic cannabis use and aggression and violence and that individuals can experience the cognitive effects of withdrawal—including irritability and aggressiveness—for several days after their last use. Baxter's behavior on the night of his arrest mirrored Dr. Heustis's findings: he acted aggressively and combatively in his interactions with law enforcement and civilians. Baxter—accompanied by fellow gang members—twice engaged in altercations with a rival gang while displaying or otherwise indicating his possession of a firearm. His behavior caused a bystander to report to law enforcement his suspicion that Baxter had a firearm, and Baxter ran from an officer when asked what was in his pocket.

Based on this conduct, the district court did not err in concluding by a preponderance of the evidence that Baxter's conduct on the night of the arrest was sufficiently analogous to prohibited behavior under Founding-era going-armed laws. As the district court pointed out, even if Baxter did not openly brandish his firearm, Baxter's possession of a firearm was obvious enough that an innocent bystander reported it to the police. And when officers attempted to talk to Baxter, he fled. As such, we agree with the district court's assessment that Baxter "absolutely presented

a credible threat to the safety of others" as he "engaged in a sustained public confrontation while acting aggressively with other gang members and in possession of a loaded firearm." Unlike in Perez, here, the district court made an explicit finding that marijuana impaired Baxter's judgment on the night that he was arrested such that it caused him to "threaten[] the physical safety of civilians, law enforcement, and his adversaries alike." See 145 F.4th at 808 (explaining that remand was appropriate because "the district court did not make an explicit finding that marijuana impaired [the defendant's] decision-making on the day of the car chase such that it caused him to threaten others' safety, or that he induced terror by driving at high speeds while under the influence of marijuana"). And the record amply supports this finding. Accordingly, we conclude that the district court did not err in denying Baxter's motion to dismiss as the Government met its burden in demonstrating that Baxter's conduct was sufficiently analogous to the conduct prohibited by the Founding-era Terror of the People laws. The Supreme Court's very recent unanimous decision in United States v. Hemani is not to the contrary. No. 24-1234, 2026 WL 1751710, at *11 (June 18, 2026) ("We do not even address whether the government could bring a prosecution under § 922(g)(3) accompanied by individualized proof that the defendant's use of marijuana (or any other drug) renders him a danger to himself or others. Or proof that a certain drug always renders its users dangerous because of its potency or for some other reason. None of those issues is before us and we do not pass on them either way.").[4]

III.

For the foregoing reasons, we affirm the district court's denial of Baxter's motion to dismiss.

---

[4]As we may affirm based on any grounds supported by the record, see Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 896 (8th Cir. 2020), we decline to address Baxter's other arguments concerning the Government's evidence regarding his social media activity and criminal history.

STRAS, Circuit Judge, concurring in the judgment.

The law should not be a game of telephone. But our drug-user-in-possession cases have become one because the rule now "bears little resemblance to" what we said "at the start." *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Parson*, 1 F.4th 552, 568 (8th Cir. 2021) (Stras, J., dissenting), *reh'g en banc granted, opinion vacated* (July 13, 2021). The relevant *non*-causal question *United States v. Cooper* asked was whether a defendant had "induce[d] terror . . . or pose[d] a credible threat to the physical safety of others with a firearm."[5] 127 F.4th 1092, 1096 (8th Cir. 2025) (citations omitted).

Just months later, the inquiry morphed into whether drug use "*caused*" a defendant "to induce terror or pose a danger to others with a firearm." *United States v. Perez*, 145 F.4th 800, 809–10 (8th Cir. 2025) (emphasis added). Yet *Perez* also insisted it was remanding "[i]n light of . . . *Cooper*." *Id.* at 802. Both could not be true. Much like the telephone game, an innocent mistake—adding the word "caused"—had changed the message. *See Parson*, 1 F.4th at 568 (Stras, J., dissenting); *see also Threat v. City of Cleveland*, 6 F.4th 672, 679 (6th Cir. 2021) (warning against the "risk" of "converting the ultimate message into something quite different from the original [one]" like in the "game of telephone" (citation omitted)). Perhaps far more than anyone thought. *See United States v. Ledvina*, 166 F.4th 716, 721 (8th Cir. 2026).

Just consider a drug user who argues that, high or not, he is flat-out dangerous with guns. Suppose further that the evidence supports the argument: he ordinarily uses them in a terrorizing way. He is so dangerous, in fact, that drug use hardly

---

[5]Other circuits have had no trouble sticking to *Cooper*'s formulation. *See United States v. Seiwert*, 152 F.4th 854, 871 (7th Cir. 2025) (noting that "going-armed laws may justify applying § 922(g)(3) to *drug users engaging in terrifying conduct*" (emphasis added)); *United States v. VanOchten*, 150 F.4th 552, 558–62 (6th Cir. 2025) (rejecting the argument that "drug use" must "predispose[] [the defendant] to violence").

-10-

moves the needle.  Rather than just disarming him for terrorizing others, like the historical analogues allow, *Perez* gives life to the absurd argument that he can have them because drugs did not *cause* him to be dangerous.  *Compare Cooper*, 127 F.4th at 1095–96 (explaining that historical laws permitted disarmament if "terrorizing behavior . . . accompan[ied] the possession" (ellipsis in original) (citation omitted)), *and United States v. Veasley*, 98 F.4th 906, 916–17 (8th Cir. 2024) (discussing "Terror of the People" laws that allowed disarmament for *using weapons* "in a way that terrorized others"), *with Perez*, 145 F.4th at 809 (requiring the court to find that *the drug use* "would or did make [the defendant] induce terror" (citation omitted)).

Fortunately, our first-in-time rule offers an easy fix.[6]  *See United States v. Johnson*, 688 F.3d 494, 501 (8th Cir. 2012) (recognizing that when two panel opinions conflict, "we are bound to follow the earliest opinion . . . as it should have controlled the subsequent panels that created the conflict" (ellipsis in original) (citation omitted)).  Given that *Ledvina* and *Perez* said they were following *Cooper*, why not take them at their word?  *See Perez*, 145 F.4th at 807 (remanding "because the district court and the parties lacked *Cooper*'s guidance"); *Ledvina*, 166 F.4th at 717 (doing the same "[i]n light of th[e] [c]ourt's decisions in [*Perez*] and [*Cooper*]").  If we do, all that matters is that Baxter was a drug user who *actually* "pose[d] a credible threat to the physical safety of others with a firearm."  *Cooper*, 127 F.4th at 1096 (quoting *United States v. Rahimi*, 602 U.S. 680, 700 (2024)).  I would start and end the analysis there.

——————————————————————

[6]Perhaps the argument is so absurd that no panel of this court would accept it, first-in-time rule or not.  After all, like most things, dangerousness usually has more than a single cause, and *Perez* does not say drug use has to be the only one.  *Cf. Olympic Airways v. Husain*, 540 U.S. 644, 653 (2004) (recognizing "the reality that there are often multiple interrelated factual events that combine to cause any given injury").  But following the rule not only provides a sure-fire way to brush away an absurd argument, it avoids the need for expert testimony connecting drugs to dangerousness in obvious cases like this one.